UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>JESUS SEGURA CERVANTES,<br><br>    Defendant. | Case No. 14-cv-03954-JSW   (JSC)<br><br>**REPORT AND RECOMMENDATION RE:  GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BY THE COURT**<br><br>Re: Dkt. No. 18 |

Plaintiff's Motion for Default Judgment (Dkt. No. 18) was referred to the Court on February 18, 2015 for report and recommendation. (Dkt. No. 19.) Plaintiff J & J Sports Productions, Inc. ("Plaintiff") brings this action under the Federal Communications Act, the Cable & Television Consumer Protection and Competition Act, and state law, and moves for entry of Default Judgment against Defendant Jose Segura Cervantes ("Defendant"), individually and doing business as La Selva Taqueria.  Plaintiff seeks default judgment, an award of statutory and enhanced damages under 47 U.S.C. §§ 605 and 553, as well as damages for conversion.  Because the Court finds the motion suitable for disposition without oral argument pursuant to Local Rule 7-1(b), the Court VACATES the hearing set for April 2, 2015.  Having carefully considered the papers that Plaintiff submitted, the Court RECOMMENDS the motion be GRANTED IN PART.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff is a distributor and licensor of sporting events.  (Dkt. No. 1 ¶ 16.)  Pursuant to contract, Plaintiff purchased the right to broadcast a September 14, 2013 boxing match, *"The One" Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program* ("Program"), including all undercard bouts and fight commentary.  (*Id.* ¶ 14; Dkt. No. 18-4.)  Pursuant to the purchase contract, Plaintiff entered into sublicensing agreements with

1    various commercial establishments in the hospitality industry in the United States allowing them
2    to publicly exhibit the Program to their patrons.  (Dkt. No. 1 ¶ 15.)  Plaintiff further alleges that
3    Defendant unlawfully intercepted and intentionally exhibited the Broadcast at the Taqueria La
4    Selva (the "Restaurant") for the purposes of direct or indirect commercial advantage or private
5    financial gain.  (*Id.* ¶¶ 17-18.)

6        In support of these allegations, Plaintiff submitted an affidavit from a private investigator,
7    Yolanda Poblete, who observed the Program at the Restaurant on September 14, 2013.  (Dkt. No.
8    13-3 at 2.)  Ms. Poblete did not pay a cover charge to enter the Restaurant.  (*Id.*)  Once inside, she
9    observed one 32- to 38-inch television in the Restaurant, and the television was showing the
10   Program.  (*Id.*)  While a fight was not being broadcast while she was in the Restaurant,
11   commentators were discussing an undercard bout that had just ended and one that was about to
12   begin.  (*Id.*)  During the 6 minutes she was present, Ms. Poblete took three headcounts of 38, 41,
13   and 43 individuals, and estimated the Restaurant had a capacity of over 55 people.  (*Id.* at 2-3.)
14   Ms. Poblete did not note whether the Program was transmitted via a satellite dish or a cable box.
15   (*Id.* at 4-5.)

16       Plaintiff subsequently filed a Complaint asserting Defendant violated:  (1) the Federal
17   Communications Act of 1934, as amended, 47 U.S.C. § 605; (2) the Cable & Television
18   Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553; (3) and the
19   California Business & Professions Code § 17200, also known as the Unfair Competition Law.  In
20   the Complaint, Plaintiff also seeks damages for conversion under state tort law.

21       Defendant failed to file a responsive pleading or otherwise appear, and the Clerk entered
22   default against him pursuant to Federal Rule of Civil Procedure 55(a) on February 4, 2015.  (Dkt.
23   No. 16.)  On February 17, 2015, Plaintiff filed the instant motion for default judgment, seeking an
24   award of statutory and enhanced damages in the amount of $22,000, plus $2,200 in damages for
25   conversion.  (Dkt. No. 18-1 at 18, 21.)  Plaintiff served Defendant with the Motion for Default
26   Judgment.  (Dkt. No. 18-1 at 23.)  Defendant has not appeared or responded to the Clerk's entry of
27   default or to Plaintiff's Motion for Default Judgment, and the deadline for opposing the motion
28   has long since passed.  *See* Civ. L.R. 7-3(a).

**DISCUSSION**

**I.  Jurisdiction and Service of Process**

A court considering whether to enter a default judgment has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction because Plaintiff's claims arise under federal statutes (47 U.S.C. §§ 553, 605), and personal jurisdiction because it is alleged that Defendant resides and does business in this District. The Court, moreover, has supplemental jurisdiction over Plaintiff's state tort claim and state statutory claim under 28 U.S.C. § 1367(a).

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (internal quotation marks omitted). Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper. California authorizes substitute service of process in lieu of personal delivery. *See* Cal. Code Civ. Proc. § 415.20. Substituted service is allowed when the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served. Cal. Code Civ. Proc. § 415.20(b). "Ordinarily . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." *Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988) (internal quotation marks omitted). To satisfy substituted service, the plaintiff must: (1) leave a copy of the summons and complaint at the defendant's usual place of business in the presence of a person apparently in charge of the business who is at least 18 years of age; (2) inform the person who receives the service of the documents' content; and (3) send the defendant a copy of the documents via first-class mail at the place where the documents were left. Cal. Code Civ. Proc. § 415.20(b). Service of a summons in this manner is deemed complete on the 10th day after the mailing. *Id.*

Here, Plaintiff's process server unsuccessfully attempted to personally serve Defendant at the Restaurant on three separate occasions. (Dkt. No. 10.) On the fourth attempt, the process server left a copy of the summons and complaint at the Restaurant with an adult identified as "Miguel," informed him of the contents, and instructed him to deliver the documents to

3

1  Defendant. (*Id.* at 1, 3.) Plaintiff's process server subsequently mailed Defendant a copy of the
2  summons and complaint via first-class mail to the Restaurant's address. (*Id.* at 4.) Because
3  Plaintiff satisfied the requirements under California Code of Civil Procedure § 415.20(b), the
4  Court finds that service of process was proper.

5  **II.    Plaintiff is Entitled to Default Judgment**

6  After entry of default, a court may grant default judgment on the merits of the case. *See*
7  Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning damages, are
8  deemed to have been admitted by the non-responding party. *See Geddes v. United Fin. Grp.*, 559
9  F.2d 557, 560 (9th Cir. 1977). "The district court's decision whether to enter a default judgment is
10 a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may
11 consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

16 *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). For the reasons discussed below, the
17 majority of these factors supports default judgment in this case.

18 First, Plaintiff would face prejudice because, if the motion for default judgment were to be
19 denied, Plaintiff would likely be left without a remedy given Defendant's failure to appear or
20 otherwise defend this action. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177
21 (C.D. Cal. 2002). Further, because Defendant has not answered the Complaint or otherwise
22 appeared in this action, the possibility of a dispute concerning material facts is unknown. What is
23 more, Plaintiff properly served Defendant and there is no evidence in the record that Defendant's
24 failure to appear and otherwise defend this action was the result of excusable neglect. (*See* Dkt.
25 No. 10.) Thus, this factor also weighs in favor of default judgment.

26 On the other hand, the amount of money at stake in the action suggests that default
27 judgment may be inappropriate. In the complaint, Plaintiff seeks the maximum possible statutory
28 damages in this action: $110,000. (Dkt. No. 1 at 9.) In this regard, Plaintiff's damages request is

4

disproportionate to the harm alleged. *See Joe Hand Promotions Inc. v. Meola*, No. 10-4781 CW (JCS), 2011 WL 2111802, at *4, (N.D. Cal. Apr. 22, 2011). However, in the Motion for Default Judgment, Plaintiff seeks only $22,200, which is well below the statutory maximums. (*See* Dkt. No. 18-1 at 18.) Thus, this factor does not weigh for or against default judgment. Finally, although the seventh *Eitel* factor, which favors decision on the merits over default judgment, weighs against default judgment, the Court finds that this factor is not dispositive. *Eitel*, 782 F.2d at 1472.

      Having determined that, on balance, the *Eitel* factors support Plaintiff's motion for default, the Court turns to the merits of Plaintiff's substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors). At bottom, these factors require Plaintiff to state a claim upon which it may recover. *Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the allegations in the complaint must state a claim upon which the plaintiffs may recover). Plaintiff's first two counts allege that Defendant violated two signal piracy statutes: 47 U.S.C. §§ 605 and 553. Section 605 provides in relevant part that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605. To state a claim for an alleged violation of Section 605, the plaintiff must plead that the defendant received, assisted in receiving, or transmitted the plaintiff's *satellite transmission* without authorization. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (satellite television signals are among the "communications" protected by the Communications Act, prohibiting unauthorized receipt and use of radio communications for one's own benefit or for benefit of another not entitled thereto). In contrast, Section 553 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a *cable system*." *J & J Sports Prods., Inc. v. Mosley*, No. C-10-5126 CW(EMC), 2011 WL 2066713, at *3 (N.D. Cal. Apr. 13, 2011) (citation omitted) (emphasis in original). In

1 other words, "[a] signal pirate violates [S]ection 553 if he intercepts a *cable* signal, [but] he

2 violates [Section] 605 if he intercepts a *satellite* broadcast." *Id.* (citation omitted) (emphasis in

3 original); *see also Charter Commc'ns Entm't v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006)

4 ("Section 605 deals with communications traveling through the air (via radio), whereas § 553

5 covers communications traveling over cable wire.").

6 Here, Plaintiff has alleged that Defendant was not authorized to intercept and exhibit the

7 Program, yet Defendant did so at the Restaurant, his commercial establishment, on September 14,

8 2013, without obtaining sublicensing rights to do so. (Dkt. No. 1 ¶¶ 11, 17.) In the Complaint,

9 Plaintiff alleges violations of both statutes, and does not allege a particular method of signal

10 transmission in place at the Restaurant. (*See generally id.*) Because Sections 605 and 553

11 prohibit two distinctly different activities, Plaintiff may not recover under both. *See J & J Sports*

12 *Prods., Inc. v. Rodriguez*, No. 5:13-cv-05551-BLF, 2014 WL 2931218, at *2 (N.D. Cal. June 27,

13 2014) (citation omitted); *see also Mosley*, 2011 WL 2077813, at *4 (noting that courts have found

14 it "highly improbably that [an established] used both cable and satellite to display [an] event").

15 Here, Plaintiff's investigator, Ms. Poblete, did not assert that, based on her investigation, a

16 particular manner of transmission was at issue. (*See* Dkt. No. 18-3 at 2-3.) There are three

17 photographs attached to the investigator's declaration: one showing a television mounting on a

18 wall, and two showing the exterior of a building. (Dkt. No. 18-3 at 5-7.) According to Plaintiff,

19 the latter two photographs depict satellite dishes atop the Restaurant, and therefore damages for a

20 Section 605 claim are warranted. (*See* Dkt. No. 18-1 at 12.) But the investigator does not describe

21 an observation of a satellite dish or a cable box; her declaration mentions neither. (*See generally*

22 Dkt. No. 18-3.) Nor does her declaration explain that she took the photographs attached thereto or

23 that those photographs actually portray the Restaurant, let alone the Restaurant with satellite

24 dishes on the roof. (*Id.*) In short, Plaintiff's investigator does not identify the type of transmission

25 Defendant used, and vague, unexplained photographs are not enough to do so on their own. Thus,

26 this is not the type of case in which an "investigator's observation [of a satellite dish] renders

27 Plaintiff's allegation that the interception occurred by satellite transmission sufficiently plausible

28 for purposes of default" on a Section 605 claim. *Rodriguez*, 2014 WL 2931218, at *3 (citation

United States District Court
Northern District of California

omitted); *cf. J & J Sports Prods., Inc. v.* Dailey, No. C 09-CV-04205 JW, Dkt. No. 14 at 4 n.4 (N.D. Cal. Mar. 19, 2010) (finding that the presence of a satellite dish was sufficient to justify default judgment and damages under Section 605).

There is some disagreement among courts in this District regarding what to do in this particular scenario—that is, when a plaintiff seeks default judgment on both Section 605 and Section 553 signal piracy claims but the complaint and investigator's declaration are absent facts identifying the type of transmission used. The distinction is meaningful, as Section 605 provides for a greater award of damages than Section 553. *Compare* 17 U.S.C. § 605, *with id.* § 553. As Plaintiff acknowledges, the Ninth Circuit has not ruled on the reach of these statutes. (*See* Dkt. No. 18-1 at 12 n.3.) Within this District, on the one hand, some courts have concluded that when a plaintiff "cannot determine the precise means Defendant used to receive the program unlawfully," default judgment under Section 605 is more appropriate given the defendant's failure to respond to the litigation. *See, e.g.*, *J & J Sports Prods., Inc. v. Marcaida*, No. 10-5125 SC, 2011 WL 2149923, at *2 (N.D. Cal. May 31, 2011). While Plaintiff refers to this as "the current Northern District Approach," it is clear that there is a split of authority within this District. (*See* Dkt. No. 18-1 at 13.) Indeed, when no method of transmission is identified, other courts—most, it seems—consider the plaintiff to have pleaded a claim under Section 553, not Section 605 for the purposes of default judgment. *See Integrated Sports Media, Inc. v. Mendez*, No. C 10-3516 PJH, 2014 WL 3728594, at *5 (N.D. Cal. July 28, 2014) (collecting cases holding on a motion for default judgment that where the complaint and investigator declaration do not state that a cable box or satellite dish was visible, it is appropriate to enter judgment and award damages under Section 553 instead of Section 605); *J & J Sports Prods., Inc. v. Parayno*, No. C-12-01704 PJH-JCS, 2012 WL 7159720, at *4 (N.D. Cal. Nov. 15, 2012) (same); *Mosley*, 2011 WL 2066713, at *4 (same) (Chen, J.); *J & J Sports Prods., Inc. v. Seldner*, No. C10-5137 TEH, 2011 WL 2650961, at *2 (N.D. Cal. July 6, 2011); *J & J Sports Prods., Inc. v. Aviles*, No. 5:10-cv-04213-JF/HRL, 2011 WL 3652621, at *2 (N.D. Cal. Aug. 19, 2011) (same); *J & J Sports Prods., Inc. v. Ro*, No. 09-02860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010) (same); *J & J Sports Prods., Inc. v. Guzman*, No. 08-05469 MHP, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16, 2009) (same).

1   This is, in part, because cable boxes are the more likely sources given that they are smaller and
2   more easily hidden, but also because where there is ambiguity between the two sources of
3   transmission, it is fairer to apply the lower threshold damages of Section 553. *See Ro*, 2010 WL
4   668065, at *3. The Court takes the latter approach, as it has before, concluding that where there is
5   ambiguity about the mode of transmission, the lower threshold of Section 553 applies. *See J & J*
6   *Sports Prods., Inc. v. Segura*, No. C 12-01702 JSW, 2014 WL 1618577, at *3-4 (N.D. Cal. Apr.
7   21, 2014).

8        In this situation, in light of the pleading standards that govern the sufficiency of a
9   complaint and given the damages differences between the statutes, the Court concludes that
10  "plaintiff must allege facts sufficient to establish interception by satellite in order to receive an
11  award under 47 U.S.C. § 605." *Aviles*, 2011 WL 3652621, at *2 (citations omitted)l *see also G &*
12  *G Closed Circuit Events, LLC v. Espinoza*, No. 12-06349, 2013 WL 4520018, at *3 (N.D. Cal.
13  Aug. 23, 2013) (finding that because the plaintiff did not allege that defendant intercepted a
14  *satellite* transmission in the complaint, it is not a factual allegation that can be taken as true (citing
15  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 602 (9th Cir. 2008)). As set forth
16  above, Plaintiff's complaint has not done so here, and the declaration of Ms. Poblete adds no
17  allegations to fill this gap. The Court therefore concludes that Plaintiff has adequately established
18  a Section 553 claim, and not a Section 605 claim. Accordingly, the Court recommends that
19  default judgment be granted with respect to Count II (Section 553) but not Count I (Section 605).

20       Further, the Complaint is sufficient to state a meritorious claim for conversion. Under
21  California law, a claim for conversion has three elements: (1) ownership or right to possession of
22  property; (2) wrongful disposition of the property right of another; and (3) damages. *See G.S.*
23  *Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *Greka*
24  *Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005). "Because conversion is a strict
25  liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not
26  relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009). Exclusive right to distribute a
27  broadcast signal to commercial establishments constitutes a "right to possession of property" for
28  the purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423

8

1  (N.D. Cal. 1995) (misappropriation of intangible property without authority from owner is
2  conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005)
3  (concluding that the right to distribute programming via satellite constitutes a right to possession
4  of personal property for purposes of a conversion claim under California law).

5  In the Complaint, Plaintiff alleges that it was granted the exclusive nationwide commercial
6  distribution rights to the Program, and thus had the right to possession of the property at the time
7  that Defendant allegedly intercepted it and displayed it at the Restaurant. (Dkt. No. 1 ¶¶ 11, 14,
8  17.) Plaintiff asserts that Defendant unlawfully intercepted the Program and that unauthorized
9  interception and exhibition of the Program at the Restaurant on September 14, 2013 constituted
10 conversion. (*Id.* ¶ 29.) These allegations constitute a sufficiently pled claim for conversion under
11 California law.

12 Based on the foregoing, the undersigned concludes that Plaintiff has adequately stated a
13 claim under Section 553 and for conversion, which weighs in favor of entering default judgment
14 as to these claims, but not for Plaintiff's Section 605 claim.[1] Given that the great majority of the
15 Eitel factors weigh in favor of default judgment as to these claims, the Court therefore
16 recommends that the Court enter default judgment for Plaintiff on these claims.

### III. Damages

18 A plaintiff is required to prove all damages sought in the complaint. *See Tele Video Sys.,*
19 *Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 2002). Thus, a court does not take allegations
20 regarding damages as true. *See id.* No relief sought may be different in kind, or exceed in
21 amount, than that which is demanded in the pleadings. *See* Fed. R. Civ. P. 54(c). If the facts
22 necessary to determine the damages are not contained in the pleadings, or are legally insufficient,
23 they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267
24 (9th Cir. 1992).

---

[1] Although Plaintiff also states claims in the Complaint for a violation of California Business and Professions Code § 17200, damages are only sought in the present Motion for Default Judgment for the Defendant's statutory signal piracy violation and for conversion. Therefore, the Court need not reach the question of whether Plaintiff's claims under the California Business and Professions Code § 17200 has merit or whether the Complaint states a claim for violations of those sections, and the Court does not recommend entering default judgment for Plaintiff on this count.

9

Here, Plaintiff seeks a total of $22,000 in damages on its statutory claims—$5,500 in statutory damages under 47 U.S.C. § 605(e)(3)(c), and $16,500 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii)—as well as $2,200 in damages for conversion. (Dkt. No. 18-1 at 14, 21.) As discussed above, the Court concludes that Plaintiff is not entitled to default judgment on its Section 605 claim, and therefore Plaintiff is not entitled to damages on this claim. Although Plaintiff's itemized damages calculation sought damages under Section 605, Plaintiff specifically noted that "[t]o the extent this Court finds that judgment and damages should be awarded under 47 U.S.C. § 553[,] the arguments with respect to damages are the same."[2] (Dkt. No. 18-1 at 13 n.4.) Accordingly, the Court considers whether Plaintiff is entitled to the statutory and enhanced damages it seeks under Section 553 instead, before turning to Plaintiff's requested conversion damages.

### A. *Plaintiff is Entitled to Statutory Damages under 47 U.S.C. § 553*

Under Section 553(c)(3)(A)(ii), Plaintiff is entitled to damages of no less than $250, but no more than $10,000, in an amount the Court considers just. "The Court may also enhance the award of damages by up to $50,000 if it finds that the conduct was 'committed willfully and for the purposes of commercial advantage or financial gain.'" *Seldner*, 2011 WL 2650961, at *1 (quoting 47 U.S.C. § 553(c)(3)(B)). In determining damages under this Section, courts consider a variety of factors including "use of a cover charge, increase in food price during programming, presence of advertising, number of patrons, number of televisions used, and impact of offender's conduct on claimant." *J & J Sports Prods., Inc. v. Concepcion*, No. 10–5092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. Jun. 7, 2011). Courts also consider whether a defendant is a repeat offender. *See, e.g.*, *J & J Sports Prods., Inc. v. Paniagua*, No. 10–05141, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011) (awarding enhanced damages for a repeat offender). Additionally, courts look to the actual cost of a commercial license, defendant's incremental profits, and the need to deter piracy. *See, e.g.*, *Mosley*, 2011 WL 2066713, at *5 (calculating actual losses based on the license

---

[2] Indeed, even without such explicit statement, other courts that have found Section 605 damages unavailable have analyzed a plaintiff's request for damages under Section 553 even where the plaintiff had failed to seek damages under that statute. *See, e.g.*, *G & G Closed Circuit Events, LLC v. Castro*, No. 12-04649, 2013 WL 871913, at *3 (N.D. Cal. Mar. 7, 2013).

1     fee and an estimate of defendant's potential profits); *see also J & J Sports Prods. v. Ho*, No. 10-
2     01883-LHK, 2010 WL 3912179, at *1 (N.D. Cal. Oct. 5, 2010) ("A traditional method of
3     determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits
4     made by the defendants." (internal citations omitted)).

5           Generally, "courts in this district . . . have found that an award of the statutory minimum is
6     appropriate where, among other things, events are broadcast on a single occasion to a small
7     audience, and the plaintiff produces little or no evidence of financial gain." *J & J Prods., Inc. v.*
8     *Montecinos*, No. C 09-02604 JSW, 2010 WL 144817, at *4 (N.D. Cal. Jan. 11, 2010) (citations
9     omitted); *see also Univ. Sports Network, Inc. v. Jimenez*, No. C-02-2768-SC, 2002 WL 31109707,
10    at *1 (N.D. Cal. Sept. 18, 2002) ("The courts typically have evaluated the extent to which the
11    plaintiff demonstrated the defendant's intent to use the broadcast to realize personal gain, whether
12    the acts of piracy were repeated, and the extent of the rebroadcast.  Where events were broadcast
13    on a single occasion to a small audience, and the plaintiff produces little or no evidence of
14    financial gain, courts typically have awarded only the [ ] statutory minimum.").

15          Here, the motion for default judgment states that Defendant did not impose a cover charge,
16    and there is no allegation in the Complaint and no evidence in the record of increased food or
17    beverage prices as a result of the Broadcast.  Although Defendant's Restaurant is alleged to have a
18    capacity of more than 55 people, Ms. Poblete's headcounts estimated at most 43 persons.
19    According to Plaintiff's declaration attached to the instant Motion for Default Judgment, for a
20    venue of this size, a commercial sublicense to broadcast the Program would have cost $2,200.00.
21    (*See* Dkt. No. 18-4 ¶ 8 & Ex. 2.)  In addition, there are allegations that Defendant is a repeat
22    offender:  as Plaintiff points out, default judgment was entered against Defendant in another signal
23    piracy case brought by Plaintiff.  *Segura*, 2014 WL 1618577, at *3-4.  Although the Court did not
24    enter default judgment until seven months after the broadcast date of the Program at issue here, the
25    procedural history of *Segura* makes clear that Defendant acknowledged its conduct well before
26    then.  Specifically, Defendant entered a settlement agreement with Plaintiff in that case over a year
27    before Defendant broadcast the Program at issue here.  (*J & J Sports Prods., Inc. v. Segura*, No.
28    4:12-cv-1702-JSW, Dkt. No. 16 (N.D. Cal. Aug. 21, 2012).)  Default judgment followed when,

1  months later, Plaintiff sought to withdraw the settlement due to Defendant's failure to comply.

2  (*See id.* Dkt. Nos. 20, 25, 30.) Because Defendant broadcast the Program after Defendant's

3  acknowledgment of signal piracy in the earlier case, repeat offender status is therefore appropriate

4  here.

5  In the absence of evidence of Plaintiff's damages or that Defendant increased profits

6  significantly, but given the evidence that Defendant is a repeat offender, the Court recommends an

7  award of $3,000—the loss incurred by Plaintiff plus a margin for profits earned and a portion

8  meant to deter future signal piracy. *See, e.g.*, *Montecinos*, 2010 WL 144817, at *4 (awarding

9  $5,000 in statutory damages, $10,000 in enhanced damages, and $3,750 for conversion where

10  Defendant was a two-time repeat offender); *Dailey*, No. C 09-CV-04205 JW, Dkt. No. 14 at 4 n.4

11  (N.D. Cal. Mar. 19, 2010) (finding the defendant to be a "multiple offender" and awarding $2,500

12  in statutory damages, $2,500 in enhanced damages, and $1,000 for conversion). Other courts have

13  noted that statutory damages awarded in this District typically are in the $1,000 to $2,500 range.

14  *See, e.g.*, *J & J Sports Prods., Inc. v. Mujadidi*, No. C-11-5570 EMC, 2012 WL 3537036, at *5

15  (N.D. Cal. Aug. 14, 2012) (citation omitted). Notably, while the statutory damages measure here

16  is slightly larger than the average other courts have identified, *see Mujadidi*, 2012 WL 3537036, at

17  *5, the greater amount is appropriate where, as here, the sublicensing fee for the particular

18  broadcast was larger to begin with. *Compare Montecinos*, 2010 WL 144817, at *4 (awarding

19  $5,000 in statutory damages where the licensing fee would have been $3,750), *with Mosley*, 2011

20  WL 2066713, at *3 (awarding $2,500 in statutory damages where the licensing fee would have

21  been $2,200 and the defendant was not a repeat offender), *and Mujadidi*, 2012 WL 3537036, at *5

22  (awarding $1,500 in statutory damages where the licensing fee would have been $900).

23  Accordingly, the Court recommends that Plaintiff be awarded $3,000 in statutory damages.

24  B.   *Plaintiff is Entitled to Enhanced Damages under 47 U.S.C. § 553*

25  Plaintiff also seeks enhanced damages in the amount of $16,500.[3] The Court has

26  discretion to enhance the damages where "the violation was committed willfully and for the

---

[3] Plaintiff seeks enhanced damages under Section 605(e)(3)(C)(ii). As discussed, the Court instead analyzes Plaintiff's enhanced damages under Section 553(c)(3)(B).

1  purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C.
2  § 553(c)(3)(B). Plaintiff contends that it is impossible that Plaintiff's signal was mistakenly,
3  innocently, or accidentally intercepted. The Court agrees that the evidence supports an inference
4  that Defendants acted willfully in intercepting and exhibiting the Broadcast. *See J & J Sports*
5  *Prods., Inc. v. Hernandez*, No. 1:11-cv-00408 OWW GSA, 2011 WL 3319558, at *4 (E.D. Cal.
6  Aug. 1, 2011) ("By their default, Defendants have admitted to willfully violating the references
7  statutes for the purposes of commercial advantage."). This is especially true where, as here, there
8  is evidence that Defendant is a repeat offender who was put on notice of his own misconduct.
9  Moreover, Defendant financially benefitted from the illegal interception both by avoiding paying
10 the licensing fee and presumably attracting additional patrons who spent more time in the
11 establishment watching the Broadcast. *See J & J Sports Prods., Inc. v. Wood*, No. 11–1160, 2011
12 WL 6961334, at *6 (N.D. Cal. Nov. 2, 2011) (presumably broadcasting the event would attract
13 additional patrons).
14       In light of Defendant's affirmative misconduct, repeat offender status, and in order to deter
15 future willful violations, the Court recommends Plaintiff be awarded $6,000 in enhanced damages,
16 which is twice the statutory award. *See Segura*, 2014 WL 1618577, at *5 (awarding double the
17 statutory award as enhanced damages); *Mendez*, 2014 WL 3728594, at *6 (same); *Mujadidi*, 2012
18 WL 3537036, at *6 (awarding $4,000 in enhanced damages—just over 2.5 times the statutory
19 damages award—to a one-time repeat offender). The Court finds that this amount is appropriate
20 given the allegation that Defendant is a repeat offender, on the one hand, but given the absence of
21 evidence that food and beverage prices increased, there was no cover charge, and the Program was
22 playing on only one relatively small television.
23       C.    *Plaintiff is Entitled to Conversion Damages*
24       Finally, Plaintiff seeks $2,200 in conversion damages. (Dkt. No. 18-1 at 21.) Damages for
25 conversion are based on the value of the property at the time of the conversion. Cal. Civ. Code
26 § 3336. The declaration from Plaintiff indicates that Defendant would have paid $2,200 if it had
27 obtained a sublicense to broadcast the Program to its patrons. (Dkt. No. 18-4 ¶ 8.) Several courts
28 in this District have awarded conversion damages in addition to statutory and enhanced damages.

13

*See, e.g.*, *Mendez*, 2014 WL 3728594, at \*7; *J & J Sports Prods., Inc. v. Coyne*, 857 F. Supp. 2d 909, 919 (N.D. Cal. 2012); *Mujadidi*, 2012 WL 3537036, at \*7; *Seldner,* 2011 WL 2650961, at \*3; *Montecinos*, 2010 WL 144817, at \*4.  The Court finds that Plaintiff has established that the relevant sublicensing fee was $2,200 and recommends that it be awarded in full.

### III. Attorneys' Fees and Costs

Plaintiff requests an award of costs, including attorneys' fees, expended on this case pursuant to 47 U.S.C. § 605, which makes a fee award mandatory.  (Dkt. No. 18-1 at 21.)  *See also* 47 U.S.C. § 605(e)(3)(B).  As discussed above, this Order declines to use Section 605 in its analysis and would instead analyze Plaintiff's claim for fees and costs under Section 553 which allows the Court to award reasonable attorneys' fees and costs.  *See* 47 U.S.C. § 553(c)(2)(c).  However, Plaintiff has not requested a specific amount of fees or costs, nor has counsel submitted any documentation of costs, expenses, fees, or rates.  Because the record provides no basis for determining a reasonable award, the Court recommends that Plaintiffs request for attorneys' fees and costs be denied without prejudice to renewal accompanied by counsel's curriculum vitae or resume, billing and cost records, and any other documents supporting the request for reasonable attorneys' fees and costs.

### CONCLUSION

For the reasons explained above, the Court RECOMMENDS judgment be entered in favor of Plaintiff against Defendant Jesus Segura Cervantes, individually and d.b.a. La Selva Taqueria.  The Court also RECOMMENDS that Plaintiff's motion be GRANTED as to the claim under 47 U.S.C. § 553 and the state tort conversion claim, but DENIED insofar as it seeks relief under 47 U.S.C. § 605 or the California Business and Professions Code § 17200.  The Court further RECOMMENDS that Plaintiff be awarded a total of $11,200 in damages ($3,000 in statutory damages, $6,000 in enhanced damages, and $2,200 in conversion damages).  The Court further RECOMMENDS that Plaintiff's request for reasonable attorneys' fees and cost be denied without prejudice to renewal accompanied by sufficient documentation.

Any party may file objections to this report and recommendation with the district judge within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

Civ. L.R. 72-3.  Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated:  March 31, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge